HURLEY, Respondent, v. COURSEY, et al, Appellants.

(265 N. W. 4.)

(File No. 7867.   Opinion filed February 5, 1936.)

*H. F. Fellows, Boyd Leedom,* and *George Williams,* all of Rapid City, for Appellants.

*Thomas G. Wall,* of Sturgis, for Respondent.

CAMPBELL, J. This appeal presents a further chapter in the history of the attempt to establish a municipal court for the city of Rapid City in Pennington county, S. D. The matter in its earlier stages has been previously dealt with by this court in Bronson v. Rapid City (1935) 63 S. D. 408, 259 N. W. 674, to which opinion we now refer for a statement as to what the relevant facts were and as to what proceedings had been attempted down to that date.

At the regular municipal election held in Rapid City on the third Tuesday in April, 1934, there was submitted to the electors (section 5206, R. C. 1919) the question of establishing a municipal court in said city. Upon the following Friday (April 20, 1934), the governing body of the municipality assembled for the purpose of canvassing and declaring the result of the election (section 6326, R. C. 1919). Just what was done and just what happened from that moment forward with reference to the question of the establishment of a municipal court is not in all respects entirely clear. The difficulty of ascertaining the precise facts and the impossibility of discovering upon what theory of counsel the various subsequent proceedings were undertaken and attempted was adverted to in the Bronson Case.

There were eleven precincts in Rapid City in 1934. Following the 1934 municipal election, two of said precincts (being election districts 5 and 6) failed to make any return whatsoever of the result of the vote on the question of establishing a municipal court. Consequently, no returns from those two precincts were before the canvassing board when it met on April 20, 1934. There were before the board, however, the returns on said question from the other nine precincts. Upon the face of the returns from those nine precincts the question of establishing a municipal court lost by quite a margin. At the time of writing the opinion in the

Bronson Case, it was our impression (which impression we think was shared by all counsel who participated in the argument and submission of said case) that the board on April 20 did, in fact, canvass the returns presented to them by the nine precincts making returns (marking districts 5 and 6 as having no votes either for or against on the question) and did "declare the result and cause a statement thereof to be made on its journal" by entering therein a vote of 968 in favor of said proposition and 1,077 against.

Thereafter, one Bronson apparently undertook to contest said election under the provisions of sections 7336-7347, R. C. 1919. He succeeded in getting the circuit court to count the ballots cast upon the question in all the eleven precincts and to announce that said question had carried by a vote of 1,293 for and 1,283 against. Later Fred C. McCain and Steve Hurley undertook to invoke the jurisdiction of the circuit court of Pennington county with reference to said matter. These two proceedings, the one attempted by Bronson and the other attempted by McCain and Hurley jointly, ultimately got into this court and are the ones dealt with in the opinion in the Bronson Case, 63 S. D. 408, 259 N. W. 674, 677, to which we again refer. We have never been able to discover anything more about the nature or theory of those two proceedings than we knew when the Bronson opinion was written, and we conceded then that we were not able to understand very much about it.

By our opinion in the Bronson Case we held, so far as concerns the contest attempted by McCain and Hurley, that they had never succeeded in invoking the jurisdiction of the circuit court and, so far as concerns any judgment entered by the circuit court in that matter, it was reversed and the cause remanded with directions to dismiss the McCain-Hurley proceedings. In so far as the case purported to present an appeal from the circuit court judgment upon the contest instituted by Bronson, we held that the attempted appeal to this court was a nullity because not taken within the time contemplated by statute. In our discussion in that opinion, however, we very definitely treated the proceeding instituted by Bronson in the circuit court as an attempted election contest, and so likewise did the counsel who argued the case. Also (although admittedly obiter) it was the very clear inference from our opinion that Bronson had likewise failed successfully to invoke

the jurisdiction of the circuit court for the reason (inter alia) that he had made no attempt to comply with the requirements of section 7338, R. C. 1919. That view, too, was shared by the then counsel for Bronson who, upon the oral argument, as stated in our opinion, "frankly admitted that in their opinion the circuit court was without jurisdiction to enter the judgment in the Bronson proceeding." We considered the proceeding instituted by McCain and Hurley and likewise the proceeding instituted by Bronson to be attempted election contests, and we still entertain that view. We squarely and necessarily held in the former opinion that McCain and Hurley had failed effectually to invoke the jurisdiction of the circuit court. Counsel at that time admitted, our former opinion obiter indicated, and we now squarely hold, that Bronson's attempt to invoke the circuit court's jurisdiction was equally ineffectual.

After the opinion in the Bronson Case was handed down, the attorneys for respondents therein filed a petition for rehearing in which they argued eloquently, lengthily, and for the first time that "no canvass was made by the canvassing board when it met for that purpose" and that our opinion in the Bronson Case proceeded on "the erroneous theory that a canvass was actually made and that the Bronson Case was a contest of the result of a canvass." We disregarded this petition for rehearing because we thought that the matter therein urged was immaterial, since even if it were true it would have brought us to the same identical result that we had already reached. The document whereby Bronson undertook to initiate his proceeding in the circuit court was entitled "Notice of Election Contest" and is very plainly an attempt to proceed to contest the result of an election under section 7336 et seq., R. C. 1919. If it is not that, it is nothing. We have recently had occasion to point out that an integral and essential part of an election is a determination and declaration of the result thereof by the board or body upon whom such duty is by law imposed and until such declaration has been made there is nothing to which any proceeding under a contest statute can be applicable. See State ex rel Ingles v. Circuit Court (1934) 63 S. D. 313, 258 N. W. 278. If there had been no canvass and declaration of the result of this election by the governing body of the city, then certainly there was nothing which Bronson could undertake to contest and his effort

to invoke the jurisdiction of the circuit court by filing a notice of contest was for that reason utterly ineffectual. It was argued in the petition for rehearing that: "The total inability of the board to canvass, determine and declare the result of the election on the municipal court proposition shows the sole reason for the Bronson contest, namely, that a judicial determination might be had by a count of the votes. * * * The Bronson contest was instituted as an equitable action under the only procedure known to our law." It was said that the purpose of Bronson was not to contest an election, the result of which had been duly determined and declared, but to endeavor to have a canvass made and a result declared. To this contention it is a complete answer that if that is what Bronson was trying to do he went about it in the wrong way. If a canvass had not been made and if a complete canvass could not be made because of failure to return the votes, then the proper remedy was mandamus addressed to the election officers and the canvassing board. The contest statute is neither designed nor intended for any such purpose and cannot be so used.

Whether we take the view that the governing body canvassed the result of the election and declared the proposition lost, or whether we take the view that the governing body entirely failed to canvass the election and declare the result thereof, it follows necessarily upon either premise that neither Bronson, McCain, nor Hurley effectually invoked the jurisdiction of the circuit court. Consequently, any action of the circuit court based upon those documents denominated "Notice of Contest" (whether filed by Bronson or by McCain and Hurley) was utterly lacking in legal validity and was a mere nullity, and the only thing for this court to do was to dismiss the appeals, which we did.

After the filing of our decision in the Bronson Case, and on April 1, 1935, at a regular meeting of the board of city commissioners of Rapid City with the mayor and all commissioners present, the following proceedings took place, as indicated by the minute book: "Commissioner Rise moved to adopt a resolution declaring the result of the vote on the question of establishing a municipal court to be: total vote cast, 2576, of which 1293 were for the question and 1283 were against, thereby establishing a municipal court, and that the record of the canvass be made to show

the same. Motion seconded by Reed and carried. Commissioners Cashman, Hill, Hughes, Merritt, Newby, Reed, Rise and Doherty voted in favor on roll call." Thereafter, and at the regular municipal election held on April 16, 1935, an attempt was made to elect a judge of the municipal court of Rapid City. There were several candidates for the office and, upon canvassing of the returns, Joseph Coursey was declared elected.

Within twenty days after the canvass of this 1935 election whereby Coursey had been declared to have been elected municipal judge, the same Steve Hurley who had been previously involved in the matter of the 1934 election served and filed notice of contest (again proceeding under the provisions of section 7336 et seq., R. C. 1919) contesting Coursey's election. He named and served as defendants and contestees both Coursey and the members of the governing body of the city of Rapid City. Hurley had not been a candidate for the office of municipal judge in the 1935 election, and it is entirely plain that Hurley's contest is predicated upon the theory that there had never been a valid establishment of any municipal court in Rapid City, and consequently that there was no such office as that of judge of said court, and that neither Coursey nor anyone else could be elected thereto.

The matter came on for hearing and trial before Honorable John F. Hughes, judge of the Sixth judicial circuit; Judge Hanley of the Seventh circuit deeming himself disqualified. During the course of the hearing Judge Hughes proceeded to get in and recount the ballots cast at the 1934 election on the question of establishing the municipal court and found the result to be 1,291 for and 1,295 against. Four ballots against the proposition which the trial judge believed were entitled to be counted were objected to by defendants and contestees. Even if those 4 ballots were rejected, according to the findings of Judge Hughes the proposition would not have carried, since the vote would have been left 1,291 for and 1,291 against. The conclusions of law of the learned trial judge were as follows:

"The court finds as conclusions of law upon the foregoing facts that the canvass, by the mayor and city commissioners, of the vote on the question of the establishment of a municipal court in the election of 1934, the same showing on the face thereof that

the returns from two of the precincts 5 and 6 had not been made, was not a valid canvass and did not give the true result of the vote at said election.

"2. That the alleged contests of Bronson v. The City Commissioners and McCain v. The City Commissioners were both null and void, were not instituted as required by law, and in each instance the court was without jurisdiction to canvass the said vote and enter the judgment made therein.

"3. That the resolution passed by the city Commissioners on the first day of April, 1935, purporting to give or state the vote in regard to the vote on the municipal court in the election of 1934, is null and void.

"4. That the canvass of the vote in this proceeding, as above set forth, if all the challenges offered by the defense are allowed and the one made by plaintiff is disallowed the vote will be 1291 for and 1291 against; and therefore the court finds that at the annual municipal election of the city of Rapid City, South Dakota, held on the 17th day of April 1934 the question 'Shall a municipal court be established in Rapid City' failed to receive a majority of the regular votes cast, and did not carry, and said court was not established.

"5. The court further finds that the submission of candidates for municipal judge to the electors of Rapid City in the municipal election of 1935 was without authority of law, null and void; and that the defendant, Joseph Coursey, is not the elected municipal judge of said Rapid City and that such office has not yet been established by the electors of said city, and that the judgment of the court should be entered pursuant hereto."

Pursuant to such findings and conclusions, judgment was entered to the effect that the submission of names of candidates for municipal judge at the 1935 election in Rapid City was without authority of law, null, and void, and that defendant Coursey is not the lawfully elected municipal judge of the municipal court of Rapid City, and that no such office has yet been established by vote of the electors of said city. From this judgment defendants and contestees have appealed to this court.

Contestant-respondent has moved here for the dismissal of the appeal, but such motion does not, in our opinion, exhibit jurisdic-

tional grounds requiring such dismissal, and we deem it to the best interests of all concerned to deny the motion and dispose of the appeal upon the merits.

The notice of contest is signed by Thomas G. Wall as attorney for the contestant and is verified by the contestant himself. Below the verification there appears in the handwriting of Mr. T. B. Thorson, who was state's attorney of Pennington county at the time this contest was instituted, as follows:

"The above and foregoing contest is hereby allowed by the undersigned states aty. of Pennington Co., S. D.

"T. B. Thorson."

Appellants urge that this does not constitute a sufficient compliance with the requirement of section 7338, R. C. 1919, to the effect that when the contest is brought by an elector (as distinguished from a candidate or person claiming the office) the notice must be "signed by the state's attorney of the proper county." We think this is a substantial and sufficient compliance with this statute.

Appellants urge that the institution of this election contest is not a proper method of raising the contention that the office to which Coursey was declared to have been elected was, in fact and in law, nonexistent. A case dealing with some phases of a very similar situation has been previously before this court. State ex rel Pryor v. Axness (1913) 31 S. D. 125, 139 N. W. 791, 793. At the regular municipal election in the city of Sisseton in April, 1910, the question of establishment of a municipal court was submitted to the electors and, upon canvass of the result, it was declared that the question had carried. The governing body of said city was about to give notice to the electors for the filling of the office of judge of such court at the regular April, 1911, election. Relator Pryor, claiming that the 1910 election establishing said court was utterly void because of defects in the petition for the calling thereof, sought a writ of prohibition to prevent the governing body of the city from giving notice of and calling such election. The alternative writ issued, but was modified in form sufficiently to permit the election to go on and an individual was elected to said office. The matter came on for trial before the court, however, after the election, and the writ was made permanent and a judg-

ment entered holding that the office did not exist; that the proceedings for the establishment election were void; that no person had been legally elected to the office, and prohibiting the governing body from declaring any person elected to such pretended office. On the appeal this court held that the case was not one for a writ of prohibition and that the proper course would have been for the relator to wait until after the April, 1911, election, at which time he would have "adequate remedies by an action in the nature of quo warranto (State v. Tillma, 32 Neb. 789, 49 N. W. 806; People v. Riordan, 73 Mich. 508, 41 N. W. 482), if not by an election contest under article 13 of chapter 19, Pol. Code, or by a writ of prohibition." That is precisely what contestant did in this case. He waited until after the election of the judge and then sought his remedy by election contest. That he might have sought it by quo warranto is clear, but it does not follow that a civil action in the nature of quo warranto (section 2781 et seq., R. C. 1919) was his only available remedy. Our election contest statutes partake to a very considerable degree of the nature of quo warranto and furnish summary methods of deciding controversies of a type and kind that might have been decided at the common law in quo warranto, as has been pointed out by this court in Warren v. Brown (1930) 57 S. D. 528, 234 N. W. 38. The Axness Case, while not specifically so holding (for, of course, the matter was obiter there), contains a very definite suggestion that the point that the office claimed by contestee has no legal existence may be raised, either by quo warranto, or by an election contest. We perceive no reason why we should not now approve and affirm that suggestion. The parties are the same who would have been necessary in quo. warranto, they have appeared and fully submitted and argued their controversy, and the proceeding has had the approval of the state's attorney.

Appellants complain bitterly that respondent cannot contest one election under the guise of contesting another and say that it was error for the court, in a contest instituted upon the 1935 election of appellant Coursey, to go back and count the ballots at the 1934 election on the question of establishing the municipal court. With that contention as a general proposition we agree, but in this particular case there are two sufficient answers to it.

In the first place, appellants, upon the hearing below, voluntarily and without any objection, participated in such recount—in fact, it was had at their instance rather than at the instance of respondent.

In the second place, it is not material upon this present record what the 1934 vote actually was as a matter of fact, and a recount of the 1934 ballots was a mere work of supererogation and could not in any manner prejudice appellants.

It is manifest that no person could lawfully be elected to the office of Judge of the municipal court of Rapid City, and indeed that such office could not exist, until the establishment of the court had been accomplished pursuant to law. The statutory method for establishing such a court is by action of the electors. Such action of the electors is not completed and is not sufficient to constitute the establishment of the court or create the office of judge thereof until there have been, first, a valid and lawful submission of the question to the electors; second, a vote thereon; and, third, a legal canvass of said vote and a lawful declaration of the favorable result thereof. In the instant case the third essential element is utterly lacking. The time for the canvass of this election was on April 20, 1934. At that time the body authorized by law to canvass the election and declare the result thereof did one of two things; either they did canvass the result and determined the vote to be 968 for and 1,077 against and declared the question lost, or they made no canvass at all. We think they did the former, but we need not decide which they did, for it is entirely immaterial. In either event, there was not on April 20, 1934, any determination by the body to whom the matter was intrusted that the question had carried or that a court had been thereby established. The attempt of the circuit court of Pennington county to declare the question carried by its judgments in the two previous contests referred to in our decision in the Bronson Case, hereinbefore cited, was invalid and ineffectual for any purpose because the jurisdiction of the court was never properly invoked and its judgment or judgments therein were utterly void. That the resolution of the board of city commissioners of Rapid City on April 1, 1935 (eleven and one-half months after this election), to the effect that the question had carried in 1934 by a vote of 1,293 for and 1,283 against, "thereby

establishing a municipal court," was ineffectual for the accomplishment of any purpose whatsoever is too clear for argument. The board of commissioners of the city of Rapid City at that date and at that time had neither power nor authority to sit as a canvassing board for the purpose of determining or declaring in any fashion whatsoever any result of the April, 1934, election.

The learned circuit judge found as a fact that the vote at the 1934 election was 1,291 for the establishment of a municipal court and 1,295 against, or, rejecting every ballot objected to by appellants, 1,291 for and 1,291 against. The correctness of that count as a matter of fact is not controverted by appellants, and having voluntarily participated in the submission of the question to the court below, the matter has become res judicata so far as appellants are concerned. But beyond that, and even if, as a matter of fact, the actual vote at the 1934 election had been two to one in favor of establishing a municipal court, nevertheless the conclusions and judgment of the court below are correct for the reason that there has never yet been, by any competent authority, any valid and lawful determination and declaration that such proposition was carried at the election whereat it was submitted.

The judgment appealed from is therefore affirmed.

All the Judges concur excepting POLLEY, P. J., not sitting.